**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH CLEVENGER, | ) | No.  EDCV 09-1279 CW |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge.  Plaintiff seeks review of the denial of disability benefits.  The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

**I.  BACKGROUND**

Plaintiff Elizabeth Clevenger was born on November 22, 1974, and was thirty-three years old at the time of her administrative hearing. [AR 11.]  She has an eleventh grade education and past relevant work experience as a nurse's assistant. [AR 11, 75-79.] Plaintiff alleges

disability on the basis of mood and mental disorders, chronic bronchitis, depression, and pain in her right hand. [AR 111.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on July 2, 2009, and filed on July 20, 2009. On January 13, 2010, Defendant filed an Answer and Plaintiff's Administrative Record ("AR"). On March 19, 2010, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for supplemental security income ("SSI") under Title XVI on November 27, 2006, alleging disability since March 1, 1992. [AR 96.] After the claim was denied initially and upon reconsideration, Plaintiff requested an administrative hearing. Two hearings were held on August 18, 2008 and November 25, 2008, before Administrative Law Judge Lowell Fortune. [Id.] Plaintiff was represented by Attorney Daniel Keenan at both hearings. [Id.] Testimony was taken from Plaintiff, medical expert Joseph Malancharuvil and vocational expert Sandra M. Fioretti. [Id.] The ALJ denied benefits in a decision issued on February 3, 2009. When the Appeals Council denied review on May 20, 2009, the ALJ's decision became the Commissioner's final decision.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the

court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1147 (9th Cir. 2001); <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996); <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id</u>. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Id</u>. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-721; <u>see also</u> <u>Osenbrock</u>, 240 F.3d at 1162.

### V.   DISCUSSION

#### A.   THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. <u>Tackett</u>, 180 F.3d at 1098; <u>Reddick</u>, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

>     Step one: Is the claimant engaging in substantial
> gainful activity?  If so, the claimant is found not
> disabled.  If not, proceed to step two.
>     Step two: Does the claimant have a "severe" impairment?
> If so, proceed to step three.  If not, then a finding of not
> disabled is appropriate.
>     Step three: Does the claimant's impairment or
> combination of impairments meet or equal an impairment
> listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
> so, the claimant is automatically determined disabled.  If
> not, proceed to step four.
>     Step four: Is the claimant capable of performing his
> past work?  If so, the claimant is not disabled.  If not,
> proceed to step five.
>     Step five: Does the claimant have the residual
> functional capacity to perform any other work?  If so, the
> claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v.

4

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her disability application date (step one); that Plaintiff had the following "severe" impairment: non-specified mood disorder (step two); and that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing (step three). [AR 100.] The ALJ determined that Plaintiff has the RFC for a full range of work at all exertional levels, with the provision that Plaintiff cannot perform jobs requiring hyper vigilance, a high production quota, and rapid assembly work or work involving the public. Additionally, Plaintiff cannot perform work requiring safety operations or in which she is responsible for the safety of others. Finally, the Plaintiff can engage in only occasional non-intensive interaction with supervisors and/or coworkers. [AR 101.] Plaintiff was unable to perform past relevant work (step four). [Id.] The vocational expert testified that a person with Plaintiff's RFC could perform work existing in significant numbers, such as an industrial cleaner, kitchen helper and/or hand packer (step five). [AR 102.] Accordingly, Plaintiff was not found "disabled" as defined by the Social Security Act. [Id.]

**C.   ISSUES IN DISPUTE**

The parties' Joint Stipulation sets out five disputed issues:

---

Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

1. Whether the ALJ erred in failing to consider the lay witness' statements;
2. Whether the ALJ failed to properly consider Dr. Stone's Mental Residual Functional Capacity Assessment;
3. Whether the ALJ properly considered the treating psychiatrist's opinion regarding the Plaintiff's 5150 status;
4. Whether the ALJ properly considered the consultative examiner's opinion and properly developed the record; and
5. Whether the ALJ posed a complete hypothetical question to the Vocational Expert.

[JS 2-3.]

**D.   ISSUE ONE: LAY TESTIMONY AND STATEMENTS**

In the first claim, Plaintiff asserts that the ALJ failed to consider the written statements of Shirley Abbey, Plaintiff's mother. Plaintiff asserts that the ALJ ignored these statements and failed to provide germane reasons for doing so. On February 3, 2007, Ms. Abbey completed a "Function Report - Adult - Third Party" form describing Plaintiff's daily activities and other functions. Ms. Abbey wrote that Plaintiff tends to get dizzy when bending over, tires easily, and either sleeps a lot or not at all. [AR 227, 228, 231.] She also wrote, among other things, that Plaintiff is short tempered and unable to get along with others. [AR 231]. She indicated that Plaintiff cannot handle stress or changes in her routine, and she "sees and hears things." [AR 232.]

The testimony of lay witnesses about their own observations regarding the claimant's impairments constitutes competent evidence that must be taken into account and evaluated by the Commissioner in

the disability evaluation. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). Such testimony cannot be discounted unless the ALJ gives reasons that are germane to that witness. Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Stout v. Commissioner, 454 F.3d at 1053 (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

   The ALJ's failure to address Ms. Abbey's testimony was harmless error under Stout. Ms. Abbey's testimony as to Plaintiff's symptoms was substantially similar to statements made by Plaintiff. In a document entitled "Function Report - Adult," Plaintiff wrote that she cannot lift things very well, spends most of her time in bed, and sleeps either all day or not at all. [AR 234, 235, 239.] Plaintiff also wrote that she is unable to handle stress or changes in routine, is unable to get along with others, and that she sees and hears things. [AR 239, 240.] The ALJ fully addressed Plaintiff's testimony and discounted it for clear and convincing reasons, which Plaintiff does not challenge on appeal. Accordingly, Ms. Abbey's testimony did not add substantial weight to Plaintiff's claim. Cf. Robbins, 466 F.3d at 885 (finding reversible error in failure to consider testimony

of claimant's son, noting that "[b]ecause the ALJ did not make a legally sufficient adverse credibility finding with regard to [the claimant's] own testimony, we cannot say with respect to [the son's] testimony that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination")(citations and internal quotation marks omitted). Under these circumstances, the failure to address fully this evidence was inconsequential to the ultimate determination of non-disability. Stout, 454 F.3d at 1055.

Moreover, while the ALJ did not specifically mention Ms. Abbey's testimony, it appears from the record that the ALJ accounted for Plaintiff's limitations as described by both Plaintiff and Ms. Abbey and incorporated them in the RFC determination. Testimony regarding Plaintiff's tendency to tire easily and get dizzy are reasonably reflected in the ALJ's finding that she "cannot be expected to perform jobs that require hyper vigilance, that require a high production quota, [or] that require rapid assembly work." [AR 101.] Also, testimony that Plaintiff has a short temper and inability to get along with others is reflected in the finding that Plaintiff cannot perform "work that involves the public . . . [or] work that requires safety operations or in which she is responsible for the safety of others. Lastly, the claimant can engage in only occasional non-intensive interaction with supervisors and/or coworkers." [Id.] Accordingly, Plaintiff's claim is without merit.

**E.   ISSUES TWO AND FIVE: DR. STONE**

**Background**

Plaintiff testified that most recently, she has been seen by psychiatrist Dr. Steve Salinger in October 2008, and Dr. Duonne in July 2008. [AR 38, 80.] Prior to that, Plaintiff testified that she

was seen by psychiatrist Dr. Chip Stone at Yucaipa Guidance Center from November 2006 to June 2008. [AR 13, 39.] The record reflects various documents indicating that Plaintiff visited Dr. Stone for medication visits from November 2006 to May 2008. [AR 345-348, 360-366.] However, of these visits, only one evaluation was completed by Dr. Stone, on November 21, 2006.[2] [AR 346.] All other clinical assessments were done by Keisha Downey, M.A. [AR 349-352, 362.] Dr. Stone filled out a "Work Capacity Evaluation (Mental)" check-box assessment form, and although it wasn't dated, Plaintiff testified that it was filled out and submitted to Social Security in May or June 2008. [AR 83, 357-58.] She testifies that this took place while Dr. Stone was still her treating physician, and prior to his leaving. [Id.] This form indicated that Plaintiff is markedly limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; interact appropriately with the general public; maintain socially acceptable behavior and adhere to basic standards of neatness and cleanliness; and set realistic goals or make plans independently of others. [AR 357-58.] Additionally, Dr. Stone opined that Plaintiff is extremely limited in her ability to work in coordination with or in proximity to others without being distracted by them; accept

---

[2] The evaluation occurred shortly after Plaintiff attempted suicide in November 2006 by cutting her wrists. [AR 98.] Dr. Stone diagnosed Plaintiff with bipolar disorder-mixed and adjusted her medication. [AR 346-47.] The ALJ noted, consistent with the record, that Plaintiff subsequently had regular medication visits and by January 2007, was found capable of managing her own medication. [AR 98; see AR 348.]

9

instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. [Id.]

### The Commissioner's Finding

In the administrative decision, the ALJ stated that he gave Dr. Stone's report "little to no evidentiary weight." He noted that there were only a few documents regarding Dr. Stone's treating relationship with Plaintiff, and none of these indicated that he actually counseled or observed Plaintiff to any degree. [AR 99.] The ALJ added that "[the] report does not appear to be an objective assessment of the claimant's abilities but rather an attempt to accommodate the claimant's request to assist in seeking disability benefits." [Id.] The ALJ noted that there was nothing in any of Dr. Stone's mental health records to support the various contentions made on the check box assessment, notably the opinion that Plaintiff has marked impairment in her ability to function. [Id.] Plaintiff alleges that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Stone's opinion. However, Defendant contends that the ALJ properly noted that there was little evidence of a treating relationship between Dr. Stone and Plaintiff; and even if there was a treating relationship, the ALJ's evaluation was supported by substantial evidence.

### Discussion

Ninth Circuit cases distinguish among the opinions of three types of physicians: those who treat the claimant (treating physicians), those who examine but do not treat the claimant (examining or consultative physicians), and those who neither examine nor treat the

claimant (non-examining physicians).  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); <u>see also</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007).  The opinion of a treating physician is given deference because he is employed to cure and has a greater opportunity to know and observe the patient as an individual.  <u>Orn v. Astrue</u>, 495 F.3d at 633; <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987).  The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician.  <u>Orn v. Astrue</u>, 495 F.3d at 631; <u>Lester v. Chater</u>, 81 F.3d at 830.  Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it.  If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record.  <u>Valentine v. Commissioner of Social Sec.</u>, 475 F.3d 684, 692 (9th Cir. 2009); <u>Ryan v. Commissioner of Social Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008); <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005); <u>Lester v. Chater</u>, 81 F.3d at 830-831.  However, if the treating physician's opinion is not well-supported, or is inconsistent with other evidence in the record, various factors can be considered in determining how much weight the testimony should be given.  These factors include the "length of the treatment relationship and the frequency of examination by the treating physician; and the nature and extent of the treatment relationship between the patient and the treating physician."  <u>Orn v. Astrue</u>, 495 F.3d at 631 (internal citations and quotation marks omitted).  Additional factors include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the

11

consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and other factors..." Id.

First, the record includes sufficient evidence of a treating relationship between Dr. Stone and Plaintiff. The record indicates that Dr. Stone prescribed medication to Plaintiff from November 2006 to May 2008, consistent with Plaintiff's testimony that Dr. Stone treated her from November 2006 to June 2008. [AR 13, 38-39, 345-58, 360-66.]

However, the ALJ provided sufficient reasons for rejecting the opinion of Dr. Stone. The ALJ found that Dr. Stone's opinion was conclusory and inadequately supported by his own mental health clinic records. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1202 n. 2 (9th Cir. 2001)(holding that medical opinion is "entitled to little if any weight" where the physician "presents no support for her or his opinion"). Other than the initial psychological evaluation performed by Dr. Stone in 2006, the remainder of his records over the two year treating relationship do not provide any support for his opinion expressed in the check-box assessment form. Moreover, Dr. Stone's opinion was in conflict with substantial evidence in the record, such as the opinion of both consultative psychiatrists Dr. Adam Cash and Dr. Malancharuvil that Plaintiff had no marked limitations in her ability to function and was malingering. Accordingly, this claim is without merit.

With regard to Issue Five, Plaintiff alleges that the ALJ did not consider all of Plaintiff's limitations when posing a hypothetical to the Vocational Expert. Specifically, Plaintiff alleges that the ALJ did not give specific and legitimate reasons for rejecting Dr. Stone's

opinion, and that the ALJ should have considered all limitations included in Dr. Stone's opinion. The ALJ is not required to include limitations for which there is no evidence. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). The ALJ's hypothetical questions accounted for a person who could not perform work requiring hypervigilance, high quota production rate, rapid assembly line work, and work involving the public. [AR 85-86.] He also accounted for a person who could not be responsible for safety operations or the safety of others, and could only engage in occasional, non-intense interaction with supervisors and coworkers. [Id.] As mentioned above with regard to Issue Two, the ALJ gave specific and legitimate reasons for discounting Dr. Stone's opinion. The hypothetical questions asked by the ALJ included all limitations for which there was sufficient supporting evidence in the record. Accordingly, this claim is also without merit.

**F.   ISSUE THREE: GAF SCORE**

On November 9, 2006, Plaintiff was admitted to Moreno Valley Community Hospital after cutting her wrists. [AR 307.] Upon admittance, Plaintiff was diagnosed with Bipolar Disorder I, Mixed, and a global assessment of functioning ("GAF")[3] score of 28. [AR 310.] When Plaintiff was discharged on November 13, 2006, she was

---

[3] A GAF score reflects a clinician's subjective rating, on a scale of 0 to 100, of the more severe of two components: the severity of a patient's psychological symptoms, or the psychological, social, and occupational functioning of a patient. A GAF score of 21-30 is indicative of behavior that is considerably influenced by delusions or hallucinations OR serious impairment in communications or judgment OR inability to function in all areas.

assessed with a GAF score of 40[4]. [AR 307.]

Plaintiff asserts that these GAF scores were consistent with findings of the treating psychiatrist, Dr. Stone. Plaintiff further asserts that the ALJ failed to indicate if he accepted or rejected the findings regarding both the GAF scores and Dr. Stone's findings. However, the ALJ properly rejected the findings of Dr. Stone, as discussed above in Issue Two. With regard to the GAF scores, an ALJ's acceptance or rejection of certain findings can be inferred. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (A reviewing court may draw specific and legitimate inferences from the ALJ's opinion "if those inferences are there to be drawn."). The ALJ in this case stated the following in the administrative decision: "[Dr. Malancharuvil] noted that while the claimant had a GAF of 31 when she slit her wrists, shortly thereafter her GAF was assessed to be 65 and she was found capable of managing her own medications." [AR 99.] Additionally he noted that Dr. Cash did not provide a GAF on his report, "presumably due to the invalidation of the test results." [Id.] It is reasonable to infer from the ALJ's discussion of the GAF scores that he rejected the findings regarding the GAF scores.

Furthermore, this decision was entirely consistent with the record. The record shows that these scores were administered immediately after Plaintiff attempted suicide by slitting her wrists. Since this incident, Plaintiff has not attempted suicide. Additionally, there is no evidence, including the assessment by Dr. Stone, that the scores are relevant to her current mental state and

---

[4] A GAF of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.

residual functional capacity.  Moreover, a GAF score is not necessarily indicative of a plaintiff's functional capacity to work for Social Security purposes, and in this case, represented only an initial assessment.  See Howard v. Commissioner, 276 F.3d 235, 241 (6th Cir. 2002).  Accordingly, these claims are without merit.

### G.   ISSUE FOUR: DR. CASH

#### Background

On September 24, 2008, Plaintiff underwent a consultative psychological examination by Dr. Adam Cash. [AR 367-371.] The examination included general observations, relevant history, as well as the administration of mental status and intelligence tests.  Based on the results of these tests, Dr. Cash noted that Plaintiff's level of intellectual functioning was in the "borderline to low average range based on observation alone and her ability to articulate herself." [AR 369.] Her results on the Wechsler Adult Intelligence Scale-III (WAIS-III) IQ test, however, placed her within the "Extremely Low" range.  Dr. Cash opined that this result was "marginally valid at best and should be interpreted with caution.  It was within the mental retardation range and this result is completely inconsistent with her presentation and her history." [AR 370.] Additionally, he noted that her Minnesota Multiphasic Personality Inventory - 2nd Edition (MMPI-2) scores were "marginally valid at best and consistent with some overreporting," and her Rey 15 II scores were "indicative of dissimulation." [AR 368.] Dr. Cash further noted that the "[t]est results should be interpreted with caution." [Id.] Overall, Dr. Cash opined that Plaintiff's tests were "essentially invalid." [AR 371.] Plaintiff alleges that Dr. Cash's statements that the tests are both "marginally valid" and "essentially invalid" are

15

inconsistent.  Plaintiff alleges that this discrepancy is important because if there is any validity to Plaintiff's IQ scores, then it is more likely that Plaintiff meets the criteria in Listing 12.05.

### **The Commissioner's Finding**

In the administrative decision, that ALJ discussed the evaluation of Dr. Cash.  The ALJ also made a finding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  However, Plaintiff asserts that the ALJ did not make it clear whether he accepted or rejected the findings of Dr. Cash.  Plaintiff asserts that the ALJ should have inquired further into the matter, and therefore that the matter should be reversed or remanded for further proceedings.

### **Discussion**

The opinion of the examining physician, if supported by clinical tests and observations upon examination, constitutes substantial medical evidence and may be relied upon by the ALJ in order to determine a claimant's RFC.  Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).  As with a treating physician, the Commissioner must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician and may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence." Carmickle v. Commissioner of SSA, 533 F.3d

1155, 1164 (9th Cir. 2008) (quoting Lester v. Chater, 81 F.3d at 830).

Here, the ALJ's finding that the Plaintiff does not have an impairment that meets or medically equals a listed impairment was consistent with the findings in Dr. Cash's report. As the ALJ noted, Dr. Cash found that while Plaintiff did show evidence of some learning and mood difficulties, other test scores which placed Plaintiff in the mildly retarded range were inconsistent with her history and presentation. It should also be noted that Dr. Cash's statement that Plaintiff's scores were "marginally valid at best" referred specifically to her MMPI-2 scores. [AR 370.] On the other hand the statement that her tests were "essentially invalid" referred to the analysis of the tests as a whole. [AR 371.] Thus, these two statements are not necessarily inconsistent. Dr. Cash's findings, as well as the record as a whole, do not suggest that Plaintiff's condition meets or equals a listed impairment. By holding the same, the ALJ clearly accepted Dr. Cash's findings, and took them into consideration in the disability determination.

## V.  ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.
2. This action is **DISMISSED WITH PREJUDICE**.
3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: October 13, 2010

_Carla M. Woehrle_
CARLA M. WOEHRLE
United States Magistrate Judge